# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**FILED**

AUG 3 2007

U.S. DISTRICT COURT
CLARKSBURG, WV 26301

**OLIVER MCCOMB, JR.,**

    **Plaintiff,**

v.

Civil Action No. 3:07cv68
(Judge Bailey)

**WARDEN MARTINEZ,**

    **Defendant.**

## OPINION/REPORT AND RECOMMENDATION

On June 4, 2007, the *pro se* plaintiff initiated this action by filing a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241 and a Motion for TRO or Preliminary Injunction. In the petition and motion for injunctive relief, the plaintiff asserts that an attempt was recently made on his life. At the time this case was filed, the plaintiff was a federal inmate at the Hazelton Penitentiary in Bruceton Mills, West Virginia ("USP-Hazelton"). The plaintiff further asserts that although he is in protective custody, the Bureau of Prisons ("BOP") is attempting to either remove him from protective custody or transfer him to another facility. The plaintiff seeks an injunction against such action because he believes his life is in imminent danger of harm because there is a contract out on his life.

On June 6, 2007, the undersigned conducted a preliminary review of the petition and determined that although the plaintiff had not paid the required filing fee nor filed the paperwork necessary to determine his eligibility to proceed as a pauper, the allegations in the complaint were sufficiently serious to warrant proceeding with the case.[1] Therefore, the Clerk was directed to issue

---

[1] The plaintiff subsequently filed the necessary forms and was granted IFP status. See dckt. 18.

summonses and to serve the defendant forthwith. The defendant was directed to file a response to the plaintiff's motion for injunctive relief within ten days of the date of the Order. Moreover, the undersigned determined that because the plaintiff was challenging the conditions of his confinement, rather than the execution of his sentence, the case would be construed as a civil rights action unless the plaintiff objected within ten days of the date of the Order. No objections were filed and the case was construed as a civil rights action on June 27, 2007.

In the meantime, the defendant filed a response to the plaintiff's motion for injunctive relief. The plaintiff filed a reply on July 12, 2007.

## I. The Complaint

In the complaint, the plaintiff asserts that he was recently assaulted and that his life is in immediate and verifiable danger. The plaintiff asserts that the Bureau's plan to transfer him to another facility was initiated merely to cover-up the fact that Hazelton staff was responsible for the plaintiff being at risk of death. In support of this claim, the plaintiff asserts that it is well documented in his record that Muslim extremist have a contract out on his life. The plaintiff therefore seeks an injunction to stop his transfer to another facility.

Furthermore, the plaintiff concedes that he has not exhausted his administrative remedies with regard to the claims raised in the complaint. However, the plaintiff asserts that such requirement should be waived in light of serious nature of the allegations.

## II. Plaintiff's Motion for TRO or Preliminary Injunction

In the motion, the plaintiff asserts that the court should issue a temporary restraining order or a preliminary injunction which halts his transfer from administrative detention where he is in protective custody. The plaintiff asserts that the BOP is attempting to "rush transfer" him to another

facility to "shuffle the problem" to the other facility. Moreover, the plaintiff asserts that he would be in immediate danger if moved under the current conditions. The plaintiff asserts that halting his transfer would cause no financial hardship to the BOP and that it is in the public interest to protect the plaintiff's rights and insure his individual safety.

### III. The Defendant's Response

In response to the plaintiff's request for injunctive relief, the defendant asserts three reasons for denying the plaintiff's request. They are:

(1) the plaintiff has failed to exhaust administrative remedies;

(2) the plaintiff has not established that his rights have been violated; and

(3) the Prison Litigation Reform Act and pertinent caselaw preclude the injunctive relief requested in this case where there is not a violation of a constitutional right.

### IV. Analysis

#### A. Exhaustion

Under the Prison Litigation Reform Act (PLRA), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983, or any other federal law, must first exhaust all available administrative remedies. 42 U.S.C. § 1997(e)(a). Exhaustion as provided in § 1997(e)(a) is mandatory. Booth v. Churner, 532 U.S. 731, 741 (2001). A Bivens action, like an action under 42 U.S.C. § 1983, is subject to the exhaustion of administrative remedies. Porter v. Nussle, 534 U.S. 516, 524 (2002). The exhaustion of administrative remedies "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes,"[2] and is required even when the relief sought is not available. Booth at 741. Because exhaustion is a prerequisite to suit, all

---

[2] Id.

available administrative remedies must be exhausted *prior to* filing a complaint in federal court. See Porter, 534 U.S. at 524 (citing Booth, 532 U.S. at 741) (emphasis added).

In addition, although the exhaustion of administrative remedies should generally be raised by the defendant as an affirmative defense, Jones v. Bock, 127 S.Ct. 910, ___ U.S. ___ (2007), the court is not foreclosed from dismissing a case *sua sponte* on exhaustion grounds if the failure to exhaust is apparent from the face of the complaint. See Anderson v. XYZ Prison Health Services, 407 F.3d 674, 681 (4th Cir. 2005).

The Bureau of Prisons makes available to its inmates a three level administrative remedy process if informal resolution procedures fail to achieve sufficient results. See 28 C.F.R. § 542.10, et seq. This process is begun by filing a Request for Administrative Remedy at the institution where the inmate is incarcerated. If the inmate's complaint is denied at the institutional level, he may appeal that decision to the Regional Office for the geographic region in which the inmate's institution of confinement is located. (For inmates confined at FCI-Morgantown, those appeals are sent to the Mid-Atlantic Regional Director in Annapolis Junction, Maryland.) If the Regional Office denies relief, the inmate can appeal to the Office of General Counsel via a Central Office Administrative Remedy Appeal. An inmate must fully complete each level of the process in order to properly exhaust his administrative remedies.

Here, the plaintiff concedes that his administrative remedies are not exhausted and his complaint could be dismissed for that reason. However, the plaintiff argues that exhaustion should be waived in light of the serious nature of the allegations contained within the complaint. Even assuming that the Court had the authority to waive the exhaustion requirement, the plaintiff's complaint fails on the merits.

## B. Failure to State a Claim

It appears that the plaintiff is alleging that the defendant has been deliberately indifferent to his needs under the Eighth Amendment. More specifically, the plaintiff appears to argue that the defendant is failing in its duty to protect him from further harm.

The Eighth Amendment imposes a duty on prison officials "to protect prisoners from violence at the hands of other prisoners." Farmer v. Brennan, 511 U.S. 825, 833 (1994). "Being violently assaulted in prison is simply not 'part of the penalty that criminal offenders pay for their offenses against society.'" Id at 834 (quoting Rhodes v. Chapman, 452 U.S. 337, 347 (1981)). "For a claim based on failure to prevent harm, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm," and that the prison officials acted with "'deliberate indifference' to inmate health or safety.'" Id. The Supreme Court left open the point at which a risk of inmate assault becomes sufficient for Eighth Amendment purposes. Id. n3. However, the Supreme Court held that "[a] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. at 837.

In response to the plaintiff's motion for injunctive relief, the defendant asserts that while the plaintiff was designated to USP-Hazelton, he made a request to be placed in protective custody for fear of his own safety. Response (dckt. 16), Ex. 2 (Declaration of Donald Petrisko) at ¶ 3. The defendant further asserts that although there was no known threat to the plaintiff at that time, the plaintiff was nonetheless placed in protective custody. Id. In light of the plaintiff's request, an

5

investigation was conducted and verified that a legitimate threat to the plaintiff's safety existed. Id. at ¶ 4. In addition, further information later came to light which revealed that the plaintiff's safety was compromised even in administrative detention. Id. Thus, since the plaintiff's safety was in jeopardy throughout the institution, it was recommended that he be transferred to another institution. Id. The petitioner was transferred on June 12, 2007. Id. at ¶ 5.

In his reply to the respondent's response, the petitioner provides further information about the assault committed on him. In his reply, the plaintiff states that he was assaulted by Muslim extremists while incarcerated at USP-Big Sandy. Reply (dckt. 20) at 1. Plaintiff was then transferred to USP-Hazelton. Id. However, the plaintiff asserts that officials at USP-Big Sandy did not inform the officials at USP-Hazelton about the factors surrounding his assault. Id. After two more attempts on his life, the plaintiff went to Hazelton staff and asked to be placed in protective custody. Id. The plaintiff asserts that although he informed staff that he could not be transferred because his life would be in danger no matter where he was incarcerated, the plaintiff was transferred to USP-Beaumont on June 12, 2007. Id. The plaintiff asserts that he is having similar problems at that institution. Id.

Here, it is clear that the defendant was not deliberately indifferent to the plaintiff's needs under the Eighth Amendment. The plaintiff was assaulted at USP-Big Sandy, not USP-Hazelton. In addition, the plaintiff concedes that USP-Hazelton staff was not given all the relevant information about the threat to the plaintiff's life. In addition, the plaintiff concedes that when he asked to be placed in protective custody, the officials at USP-Hazelton did so, and even further, investigated the plaintiff's claim that his life was in danger. The results of that investigation confirmed that the plaintiff was in danger and would remain so if he stayed at USP-Hazelton. Therefore, USP-Hazelton

officials determined that it would be in the plaintiff's best interest to transfer to another facility. Clearly, there was no failure to protect or deliberate indifference on the part of the officials at USP-Hazelton. Whether the plaintiff may have claims against the officials at USP-Big Sandy, or at his current place of incarceration, are not issues within the jurisdiction of this Court.

## C. **Motion for Preliminary Injunction**

In this Circuit, the standard for granting injunctive relief is the balancing-of-hardship analysis set forth in Blackwelder Furniture Co. v. Seilig Mfg. Co., 550 F.2d 189 (4th Cir. 1977). In making this analysis, the Court must consider the following four factors:

> (1) the likelihood of irreparable harm to the plaintiff if the preliminary injunction is denied,
>
> (2) the likelihood of harm to the defendant if the requested relief is granted,
>
> (3) the likelihood that the plaintiff will succeed on the merits, and
>
> (4) the public interest.

Direx Israel, Ltd v. Breakthrough Medical Corp., 952 F.2d 802, 812 (4th Cir. 1991) (citation omitted). The "[p]laintiff bears the burden of establishing that each of these factors supports granting the injunction." Id. (citation omitted).

A court will not grant a preliminary injunction unless the plaintiff first makes a "clear showing" that he will suffer irreparable injury without it. Id. The required harm "must be neither remote nor speculative, but actual and imminent." Id. (citations and internal quotation omitted). If such harm is demonstrated, the court must balance the likelihood of harm to the plaintiff if an injunction is not granted and the likelihood of harm to the defendant if it is granted. Id. (citation omitted). If the balance of those two factors "'tips decidedly' in favor of the plaintiff, a preliminary injunction will be granted if the plaintiff has raised questions going to the merits so serious,

substantial, difficult and doubtful, as to make them fair ground for litigation and thus for more deliberate investigation." Rum Creek Coal Sales, Inc. v. Caperton, 926 F.2d 353, 359 (4th Cir. 1991) (citations omitted). However, "[a]s the balance tips away from the plaintiff, a stronger showing on the merits is required." Id. (citation omitted).

In this case, it appears that the plaintiff's request for injunctive relief is now moot as he was transferred during the pendency of the case.[3] Nonetheless, the undersigned notes that even had this issue not become moot, the plaintiff would not have been entitled to injunctive relief.

First, although there was a legitimate threat to the plaintiff's life as confirmed by the investigation conducted by staff at USP-Hazelton, the plaintiff failed to show how prohibiting his transfer to another institution would place him in imminent harm. His transfer is in fact, intended to eliminate the threat of irreparable injury, not cause it. Second, the plaintiff cannot show a likelihood of success on the merits as noted above. The plaintiff has not exhausted his administrative remedies and his underlying claim is without merit. In addition, the Court notes that it does not have the authority to grant the plaintiff the relief sought. See Meachum v. Fano, 427 U.S. 215 (1976) (the transfer of a convicted and sentenced inmate is within the sound discretion of the BOP); see also 18 U.S.C. § 3621(b) (the BOP shall designate the place of an inmate's confinement).

## V. Recommendation

For the foregoing reasons, the undersigned recommends that the plaintiff's Motion for TRO or Preliminary Injunction (dckt. 2) be DENIED and that the plaintiff's complaint be **DISMISSED**

---

[3] Article III of the United States Constitution, limits the jurisdiction of the federal courts to cases or controversies. Therefore, a case becomes moot when there is no viable legal issue left to resolve. See Powell v. McCormick, 395 U.S. 486, 496 (1969). If developments occur during the course of a case which render the Court unable to grant a party the relief requested, the case must be dismissed as moot. Blanciak v. Allegheny Ludlum Co., 77 F.3d 690, 698-699 (3d Cir. 1996).

**with prejudice** for the failure to state a claim.

Within ten (10) days after being served with a copy of this Opinion/Report and Recommendation, any party may file with the Clerk of Court written objections identifying those portions of the recommendation to which objection is made and the basis for such objections. A copy of any objections should also be submitted to the Honorable John Preston Bailey, United States District Judge. Failure to timely file objections to this recommendation will result in waiver of the right to appeal from a judgment of this Court based upon such recommendation. 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Clerk is directed to send a copy of this Opinion/Report and Recommendation to the *pro se* plaintiff by certified mail, return receipt requested, to his last known address as shown on the docket. The Clerk is further directed to provide copies of this Opinion/Report and Recommendation to all counsel of record, as applicable, as provided in the Administrative Procedures for Electronic Case Filing in the United States District Court for the Northern District of West Virginia.

DATED: August 3, 2007.

JOHN S. KAULL
UNITED STATES MAGISTRATE JUDGE